**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| ANDREW SONGER, JR. )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>FRANK J. BISIGNANO,[1] *Commissioner* )<br>*of the Social Security Administration*, )<br>)<br>Defendant. ) | Case No. 4:24-cv-0697-MTS |

**MEMORANDUM AND ORDER**

This matter is before the Court for review of the final decision of the Defendant, the Commissioner of the Social Security Administration, denying the applications of Andrew Songer, Jr. ("Plaintiff") for Disability Insurance Benefits ("DIB") and Social Security Income ("SSI").[2] On November 9, 2021, Plaintiff applied for DIB and SSI benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401–434, 1381–1385 ("the Act") alleging a disability onset date of January 5, 2021, which was later amended to May 1, 2021. (Tr. 76, 87, 410). On July 24, 2023, the ALJ found Plaintiff was not disabled under sections 216(i) and 223(d) of the Act through the date of the decision. (Tr. 34). The ALJ found that, although Plaintiff suffered from severe impairments including osteoarthritis of the bilateral shoulders, osteoarthritis of the knee, carpal tunnel syndrome/neuropathy, and obesity, Plaintiff was capable of performing light work with

---

[1] Frank Bisignano is now the Commissioner of SSA. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Bisignano is substituted as the proper Defendant.

[2] Section 405(g) provides for judicial review of the SSA Commissioner's "final decision." 42 U.S.C. § 405(g). After the ALJ concluded Plaintiff was not disabled under the Act during the relevant disability period (Tr. 34), the Appeals Council denied Plaintiff's request for review (Tr. 1-5); thus, the ALJ's decision stands as the Commissioner's final decision.

1

some functional limitations and that sufficient jobs existed in the national economy that Plaintiff could have performed. (Tr. 17–33). For the following reasons, the Court will affirm.

**I.       Standard of Review and Legal Framework**

To be eligible for disability benefits, Plaintiff must prove that he is disabled under the Act. *Baker v. Sec'y of Health & Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A claimant will be found to have a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work" but also unable to "engage in any other kind of substantial gainful work which exists in the national economy." *Id.* at § 1382c(a)(3)(B).

The Social Security Administration has established a five-step sequential process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a). Steps 1–3 require the claimant to prove: (1) he is not currently engaged in substantial gainful activity; (2) he suffers from a severe impairment; and (3) his disability meets or equals a listed impairment. *Id.* at §§ 404.1520(a)–(d). If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to Steps 4 and 5. *Id.* at § 416.920(e). At this point, the ALJ assesses the claimant's residual functioning capacity ("RFC"), "which is the most a claimant can do despite h[is] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009); 20 C.F.R. § 404.1545. The U.S. Court of Appeals for the Eighth Circuit has noted that the ALJ must determine a claimant's RFC based on all relevant, credible evidence in the record, including medical records, the observations of treating physicians and others, and the claimant's own description of his symptoms

2

and limitations. *Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005). At Step 4, the ALJ must determine whether the claimant can return to his past relevant work by comparing the RFC with the physical demands of the claimant's past relevant work. 20 C.F.R. § 404.1520(f). If the ALJ finds at Step 4 that a claimant can return to past relevant work, the claimant is not disabled. *Id.*

The Court's role on judicial review is to decide whether the ALJ's determination is supported by "substantial evidence" on the record as a whole. *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). In determining whether the evidence is substantial, the Court considers evidence that both supports and detracts from the ALJ's decision. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Even if substantial evidence would have supported an opposite decision or the reviewing court might have reached a different conclusion had it been the finder of fact, the Court must affirm the Commissioner's decision if the record contains substantial evidence to support it. *See McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010) (explaining that if substantial evidence supports the Commissioner's decision, the court "may not reverse, even if inconsistent conclusions may be drawn from the evidence, and even if [the court] may have reached a different outcome"); *Locher v. Sullivan*, 968 F.2d 725, 727 (8th Cir. 1992) (explaining a court may not reverse merely because substantial evidence would have supported an opposite decision). The Eighth Circuit has emphasized repeatedly that a court's review of an ALJ's disability determination is intended to be narrow and that courts should "defer heavily to the findings and conclusions of the Social Security Administration." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010) (quoting *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001)); *see also Michel v. Colvin*, 640 F. App'x 585, 592 (8th Cir. 2016) (per curiam). Despite this deferential stance, a district court's review must be

3

"more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision," *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998), and not merely a "rubber stamp," *Cooper v. Sullivan*, 919 F.2d 1317, 1320 (8th Cir. 1990).

## II.     The ALJ's Decision

The ALJ's decision in this matter conforms to the five-step process outlined above.  At Step 1, the ALJ found Plaintiff did not perform substantial gainful activity during the alleged period of disability.  (Tr. 17).  At Step 2, the ALJ found Plaintiff had severe impairments of osteoarthritis of the bilateral shoulders, osteoarthritis of the knee, carpal tunnel syndrome/neuropathy, and obesity.  (Tr. 17–23).

At Step 3, the ALJ found Plaintiff did not have an impairment or combination of impairments that met the severity of a statutorily recognized impairment.  (Tr. 23–24).  Thus, the ALJ found Plaintiff had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567 and 416.967(b), with functional limitations.  (Tr. 24–32).  Plaintiff can lift/carry up to ten pounds frequently.  (Tr. 24).  He can stand and or walk six out of eight hours and sit six out of eight hours. *Id.*  He can occasionally climb ramps and stairs.  *Id.*  He can never climb ladders, ropes, and scaffolds.  *Id.*  He can occasionally stoop, kneel, crouch; and never crawl.  *Id.*  He can occasionally reach overhead, in front, and/or laterally, using the bilateral upper extremities.  *Id.*  He can occasionally handle, finger, and feel using the bilateral upper extremities.  *Id.*  He must avoid concentrated exposure to extreme cold and extreme heat, and he must avoid even moderate exposure to hazards such as moving machinery and unprotected heights.  *Id.*

At Step 4, the ALJ found Plaintiff could not return to his past relevant work as a warehouse worker or a loader/unloader.  (Tr. 32).  At Step 5, the ALJ considered Plaintiff's age, education, work experience, and RFC and found there were jobs in the national economy that Plaintiff could

4

have performed, despite his limitations, such as furniture rental consultant, counter clerk, and host. (Tr. 32–33).  Consequently, the ALJ concluded Plaintiff was not disabled under the Act.  (Tr. 32–34).

### III.     Discussion

The sole issue in this case is whether the ALJ's RFC determination is properly supported by adequate medical evidence of Plaintiff's ability to function in the workplace.  Plaintiff argues that the ALJ improperly drew functional conclusions regarding his abilities to lift, carry, reach, handle, finger, and feel, and that the ALJ failed to fully and fairly develop the record as to these functional limitations.

The RFC is "the most [a claimant] can still do despite" his physical or mental limitations. 20 C.F.R. § 404.1545(a)(1).  "'The RFC is a function-by-function assessment of an individual's ability to do work-related activities based upon all of the relevant evidence.'"  *Casey v. Astrue*, 503 F.3d 687, 696–97 (8th Cir. 2007) (quoting *Harris v. Barnhart*, 356 F.3d 926, 929 (8th Cir. 2004)).  "While the ALJ must consider all of the relevant evidence in determining a claimant's RFC, the RFC is ultimately a medical question that must find at least some support in the medical evidence of record."  *Id.* (citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)). "However, there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (first citing *Myers v. Colvin*, 721 F.3d 521, 526–27 (8th Cir. 2013); and then citing *Perks v. Astrue*, 687 F.3d 1086, 1092–93 (8th Cir. 2012)).  "In the absence of medical opinion evidence, 'medical records prepared by the most relevant treating physicians [can] provide affirmative medical evidence supporting the ALJ's residual functional capacity findings.'" *Id.* (alteration in original) (quoting *Johnson v. Astrue*, 628 F.3d 991, 995 (8th Cir. 2011)).  "With the medical record adequately developed, the ALJ was not

5

required to seek additional information . . . or order a CE." *Id.* (first citing *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 372–73 (8th Cir. 2016); and then citing 20 C.F.R. § 404.1519a(b)). This Court "will not disturb an ALJ's RFC finding so long as it is supported by 'substantial evidence in the record as a whole.'" *Austin v. Kijakazi*, 52 F.4th 723, 730 (8th Cir. 2022) (quoting *Schmitt v. Kijakazi*, 27 F.4th 1353, 1360 (8th Cir. 2022)).

Plaintiff asserts that the ALJ "derived the opinion from the whole cloth" and failed to "create a narrative bridge between said RFC determination and the medical evidence of record." Doc. [13] at 9. The Court disagrees. In assessing Plaintiff's RFC, the ALJ discussed Plaintiff's hearing testimony regarding his pain and related symptoms, his treatment records, and his activities of daily living. The ALJ also assessed the medical opinions of record, finding two partially persuasive. (Tr. 24–31).

At the June 6, 2023, hearing before the ALJ, Plaintiff testified that he had problems lifting his arms due to bilateral shoulder issues. (Tr. 25, 61). Although he underwent a left shoulder arthroplasty in August 2022, his left arm was still strained and weak, he was unable to lift it above his head, and he could barely pick up a two-liter bottle. (Tr. 25, 62–63). As to his right shoulder, he could not put his right arm out straight or lift it above his chest, and he was similarly unable to lift a two-liter bottle of soda or a gallon of milk out of the refrigerator. (Tr. 25, 63). Plaintiff explained that he was unable to follow up with a specialist after his left shoulder surgery due to financial hardship, and that surgery on his right shoulder had been delayed on account of him losing his home and having to move. (Tr. 25, 62–63). Plaintiff further testified that he had limited strength in his hands, and as a result he could not wear shoes with laces anymore or pants with buttons, but he was able to zip and unzip his tent. (Tr. 25, 63–64).

In considering the objective medical evidence, the ALJ discussed Plaintiff's history of reported shoulder pain, treatment records, and imaging results.  (Tr. 25–28).  Prior to his left shoulder surgery, Plaintiff reported shoulder pain to his primary care physician, Dr. Matthew Porter; he underwent steroid injections in his left shoulder, which provided only temporary relief; he was referred to and examined by an orthopedist; and a CT scan of his left shoulder showed severe glenohumeral arthritis.[3]  (Tr. 25–26, 417–19, 427, 441).  During a July 2022 consultative medical exam, Plaintiff presented wearing a sling on his left shoulder, he used his right hand to bend over and get his shoes/socks on and off, and he reported bilateral shoulder limitations due to pain.  (Tr. 26, 449–50).  The examiner noted Plaintiff's range of motion in his shoulders was reduced, but there was otherwise no swelling, heat, or erythema.  There was also no gross sensory loss, his motor strength was grossly intact, and his grip strength was normal.  (Tr. 26, 451–53, 455–57).  Plaintiff's left shoulder surgery proceeded without complication, and he was discharged in stable condition.  (Tr. 26, 477).  At his one month follow up, he reported that he was only wearing the sling "occasionally," he was doing his own therapy at home, he denied complications, and he reported only moderate pain (5 out of 10) in his left shoulder.  (Tr. 26, 494).  X-ray imaging showed stable left shoulder arthroplasty, although degenerative changes at the acromioclavicular joint were noted.  (Tr. 26, 494, 496).  While the orthopedist recommended that Plaintiff continue working with formal therapy and follow-up in six weeks, it does not appear that he returned to the provider until 2023.  (Tr. 26, 495).

In December 2022, Plaintiff had a follow up visit with Dr. Porter for hypertension, during which he reported bilateral shoulder pain.  (Tr. 26–27, 511–14).  Approximately two weeks later, Plaintiff saw Dr. Porter for an appointment to complete disability paperwork.  (Tr. 27, 508–10).

---

[3] X-ray imaging results from March 2020 showed moderate to severe degenerative changes in Plaintiff's left shoulder and mild degenerative changes in his right.  (Tr. 25, 472–73, 441).

7

At that time, Plaintiff reported that he was "hurting everywhere," and the provider notes reflect limited range of motion in his right shoulder, poor tactile sensation (right greater than left), and poor grip strength in his right upper extremity. (Tr. 27, 508). In February 2023, Plaintiff saw the orthopedist and reported 10 out of 10 pain in his right shoulder and reaching limitations, but there is no indication in the provider notes that he made any complaints regarding his left shoulder. (Tr. 27, 529–32). Plaintiff underwent an x-ray of his right shoulder, which showed moderate degenerative changes, and the orthopedist recommended a total right shoulder arthroplasty. (Tr. 27, 531, 533).

The ALJ noted that Plaintiff's complaints regarding his hands were not documented until his most recent visits with Dr. Porter, which coincided with his seeking disability examination paperwork. (Tr. 27, 547–55). At an April 13, 2023, visit with Dr. Porter, Plaintiff reported pain "all over," bilateral shoulder pain, and numbness in his left-hand fingers. (Tr. 27, 553–54). A week later, Plaintiff presented to Dr. Porter with occasional numbness in both hands and fingers, which had been going on for "at least a month." (Tr. 27, 547). Dr. Porter's exam notes indicate subjective weakness/effort on hands bilaterally, but normal bulk and no atrophy; movement of elbow and the wrist created pain though no deformity or swelling; and positive Tinel's signs bilaterally. (Tr. 27, 547–48). Dr. Porter's assessment was carpal tunnel syndrome, bilaterally, and neuropathy, and he recommended Plaintiff have an electromyography/nerve conduction study. (Tr. 27, 548). At the time of the hearing before the ALJ, there was no indication that Plaintiff had undergone such study.

Finally, in assessing the medical opinions of record, the ALJ found the opinions of agency consultants Sheri Bethmann, D.O., and Jerome Piontek, M.D., partially persuasive. (Tr. 28–29). In a July 26, 2022, report, Dr. Bethmann opined in part that Plaintiff was limited to lifting/carrying

8

ten pounds maximally (either frequently or occasionally), and to reaching overhead occasionally. (Tr. 28–29, 80–81). In a report from October 25, 2022, Dr. Piontek opined in part that Plaintiff was limited to reaching overhead occasionally. (Tr. 29, 102). The ALJ found these findings persuasive and incorporated them into the RFC. (Tr. 29). In assessing Dr. Porter's medical opinion, which the ALJ ultimately found unpersuasive, the ALJ considered Plaintiff's daily activities, which included driving two to three times per week, grocery shopping one to two times per week, helping prepare food when necessary, and attending to his own basic care. (Tr. 29–31, 52, 66, 340–42).

The ALJ considered all this evidence in assessing Plaintiff's RFC and determined that the record did not support the degree of limitation alleged by Plaintiff. (Tr. 28, 31). As to Plaintiff's left shoulder, the ALJ pointed to his successful surgery, as well as his post-operative appointments that showed little in the way of complaints of or further treatment for left shoulder pain. (Tr. 28). As to Plaintiff's right shoulder, the ALJ considered that while the record did show some limited range of motion, there was no objective evidence of gross strength deficits to support greater limitations. *Id.* With respect to Plaintiff's hands, the ALJ similarly noted that there was limited objective evidence beyond his subjective complaints and his performance on a recent exam, which were notably focused primarily on his disability claims. *Id.* The ALJ ultimately incorporated those limitations he found consistent with the evidence.

After considering the evidence in the record as a whole and the ALJ's decision, the Court finds that substantial evidence supports the ALJ's determination that Plaintiff had the RFC to perform light work with additional limitations. *See Austin*, 52 F.4th at 728, 730–31 (court will not disturb the ALJ's decision when it falls within the "available zone of choice"; finding that

9

substantial evidence supported the ALJ's determination where the ALJ considered claimant's treatment notes, course of treatment, and daily activities); *Hurd*, 621 F.3d at 738.

The Court finds Plaintiff's argument that the ALJ failed to fully and fairly develop the record unavailing. "Ultimately, the plaintiff bears the burden of proving disability and providing medical evidence as to the existence and severity of an impairment," *Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013) (citations omitted), and the RFC need only include the credible limitations supported by the record, *see Tindell v. Barnhart*, 444 F.3d 1002, 1007 (8th Cir. 2006). While an ALJ does have a duty to fully develop the record if a critical issue is undeveloped or there is insufficient medical evidence to determine whether the claimant is disabled, *see, e.g.*, *Johnson v. Astrue*, 627 F.3d 316, 319–20 (8th Cir. 2010), Plaintiff has not convinced the Court that such circumstances are present here. Plaintiff does not point to any medical evidence that the ALJ did not consider, nor does he specify what additional evidence the ALJ should have obtained.[4] *See Hensley*, 829 F.3d at 932 (where the medical record is adequately developed, an ALJ is not required to seek additional information); *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005) ("Without informing the court what additional medical evidence should be obtained from Dr. Johnson, Ellis has failed to establish that the ALJ's alleged failure to fully develop the record resulted in prejudice, and has therefore provided no basis for remanding for additional evidence."); *see also Frederick v. Berryhill*, 247 F. Supp. 3d 1014, 1021 (E.D. Mo. 2017) (an ALJ is not required to produce evidence and affirmatively prove that a claimant is able to perform certain functions).[5] Ultimately, the Court finds Plaintiff has failed to meet his burden here.

---

[4] At the hearing on June 6, 2023, the ALJ confirmed with Plaintiff's counsel that the record was "substantial" and "complete," and counsel made no mention of a need for any additional consultative examination. (Tr. 49).

[5] The Court notes that, although Plaintiff references the medical opinions of record and argues the RFC is contradicted by those of Dr. Porter and APRN-CNP Virginia Pierce, he makes no meaningful claim that the ALJ improperly evaluated those opinions under the relevant rules and regualtions. *See Melder v. Colvin*,

\* \* \*

For the foregoing reasons, the Court finds that the ALJ's determination is supported by substantial evidence on the record as a whole.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**.

A separate Judgment shall accompany this Memorandum and Order.

Dated this 22nd day of September 2025.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE

---

546 F. App'x 605, 606 (8th Cir. 2013) (per curiam) (a claimant must properly develop the issues he raises, and an undeveloped argument is deemed waived) (citing *Garden v. Cent. Neb. Hous. Corp.*, 719 F.3d 899, 905 n.2 (8th Cir. 2013)); *see also Williams v. Kijakazi*, 600 F. Supp. 3d 852, 857 (W.D. Tenn. 2022) (assignments of error and arguments not raised by a claimant or supported in more than a perfunctory manner may be deemed waived). Furthermore, Plaintiff effectively concedes that the latest medical opinion of record by APRN-CNP Pierce, had it been found persuasive by the ALJ, would have nonetheless resulted in the same physical and postural limitations set out by the ALJ. Doc. [13] at 11.